UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 1:25-cv-24121-EA

**Dmytro Mokanu,**

    Petitioner,

v.

**Warden Miami Federal Detention Center**,
**US Department of Homeland Security**,

    Respondents.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This cause comes before the Court on the petitioner's petition for the writ of habeas corpus [ECF No. 1]. Having carefully considered the record and the parties' arguments, the Court denies the petition for the reasons stated below.

### Background

The petitioner is a Ukrainian citizen who was allegedly granted humanitarian parole by immigration officials in January 2024 and has been working as a commercial truck driver since arriving in the United States. ECF No. 1 ¶ 19-20, 24, 27; ECF No. 1-1 at 5. In August 2025, the Broward County Sheriff's Office arrested the petitioner on charges of (1) sexual battery on a victim 18 years or older by a person 18 years or older without physical force or violence and (2) battery. ECF No. 16-2 at 1. This arrest stemmed from an incident occurring on January 1, 2025. ECF No. 16-3.

As alleged in the general affidavit and application for arrest warrant, during the early morning hours of January 1, 2025, the petitioner was messaging a female acquaintance ("the alleged

victim") on Instagram. ECF No. 16-3 at 6-7. While messaging on Instagram, they decided to go out somewhere together, and the petitioner offered to pick her up, which she accepted. ECF No. 16-3 at 7.

After picking her up, the petitioner drove the alleged victim to his apartment, where she eventually fell asleep. ECF No. 16-3 at 7. She woke up to the petitioner having sexual intercourse with her by inserting his penis into her vagina. ECF No. 16-3 at 7. She then told him that she did not want to have sexual intercourse, and she attempted to leave. ECF No. 16-3 at 7. But he "pulled her hair, threw her on the bed[,] and put a pillow over her face to keep her quiet as she was screaming." ECF No. 16-3 at 7. Thereafter, he stopped having sexual intercourse with her and drove her home. ECF No. 16-3 at 7.

When contacted by the police, the petitioner—through counsel—denied having had sexual contact with her since "she was acting crazy" that night. ECF No. 16-3 at 9. DNA testing was then conducted on two pieces of evidence, and the results showed that, for one piece of evidence, it was 62.9 sextillion times more likely that the DNA combination was from the petitioner and the alleged victim than from the alleged victim and an unknown male and that, for the other piece of evidence, it was 2.2 septillion times more likely that the DNA combination was from the petitioner and the alleged victim than from the alleged victim and an unknown male. ECF No. 16-3 at 9-10.

After the Broward County Sheriff's Office arrested the petitioner for the aforementioned state charges stemming from these acts, the United States Department of Homeland Security ("DHS") commenced removal proceedings against him on the basis that "at the time of application for admission, [the petitioner was] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [Immigration and Nationality] Act, and a valid unexpired passport, or other suitable travel document, or document

of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the [Immigration and Nationality] Act." ECF No. 16-4 at 2-3. The petitioner was then taken into the custody of United States Immigration and Customs Enforcement ("ICE") "pending removal proceedings." ECF No. 16-4 at 3.

The petitioner then filed this petition, pursuant to 28 U.S.C. § 2241, for the writ of habeas corpus. ECF No. 1. He seeks the writ for the "Court [to] issue an immediate show cause order to the Respondents to bring the Petitioner to Court and show cause why he should not be immediately released on a reasonable bond." ECF No. 1 at 12. The petitioner argues that he is entitled to the issuance of the writ because the Fifth Amendment's Due Process Clause has been violated by the revocation of his humanitarian parole without "any form of meaningful due process" and the Eighth Amendment has been violated by being detained in ICE custody, which caused him to cancel a previously scheduled back surgery, for an injury arising from a car accident he was in, due to being detained in ICE custody. *See* ECF No. 1 ¶ 5-7, 21; ECF No. 1-1 at 1.

Later, the State of Florida filed a notice of no information filed as to the state charges against him and declined to prosecute the case. ECF No. 5-1. Nevertheless, the petitioner remains in ICE's custody while his removal proceedings are ongoing. *See generally* ECF No. 5; ECF No. 16.

After the government was served with process, this Court issued an order for the parties to brief the Court's subject matter jurisdiction under 8 U.S.C. §§ 1252(b)(9) and/or (g). ECF No. 15.

**Jurisdiction**

"The right of a nation to expel or deport foreigners, who have not been naturalized or taken any steps towards becoming citizens of the country, rests upon the same grounds, and is as *absolute and unqualified* as the right to prohibit and prevent their entrance into the country." *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893) (emphasis added). And "[t]he right to exclude or to

3

expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, being an inherent and inalienable right of every sovereign and independent nation, [is] essential to its safety, its independence and its welfare[.]" *Id.* at 711. These principles of American law are deeply rooted in the English common law. *Id.* at 709.

Indeed, "[i]n England, the only question that has ever been made in regard to the power to expel aliens has been whether it could be exercised by the King without the consent of Parliament." *Id.* at 709. Originally, the King exercised sole authority in matters of immigration, though Parliament "passed several acts on the subject between 1793 and 1848." *Id.* And in 1891, the Supreme Court of the Colony of Victoria explained that the English common law allowed an alien to maintain an action for entry into the colony "only . . . if he can establish that [he] has a legal right[] . . . to enter British territory." *Id.* at 710 (quoting *Musgrove v. Chun Teeong Toy*, App. Cas. (1891) 272, 282, 283)); *see also Demore v. Hyung Joon Kim*, 538 U.S. 510, 538 (2003) (O'Connor, Scalia, and Thomas, JJ., concurring in part and concurring in the judgment) ("[H]istorical evidence suggests that [an alien] would not have been permitted to challenge his temporary detention pending removal until very recently.").

It is within this historical context that our Constitution grants Congress the power "to expel" or "to exclude aliens, or any specified class of aliens, from the country[.]" *Fong Yue Ting*, 149 U.S. at 713-14. In furtherance of this power, Congress may either (1) prohibit judicial review of immigration-related actions and grant the President the exclusive authority to expel or exclude aliens or (2) "call in the aid of the judiciary to ascertain any contested facts on which an alien's right to be in the country has been made by Congress to depend." *Id.*

Pursuant to this power, Congress passed its first immigration-related law in 1875. *Demore*, 538 U.S. at 538 (2003) (O'Connor, Scalia, and Thomas, JJ., concurring in part and concurring in the

judgment). Then, in 1952, Congress passed the Immigration and Nationality Act. This Act was later amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("the IIRIRA"), which includes 8 U.S.C. § 1252, the REAL ID Act of 2005, and, most recently, the Laken Riley Act of 2025.

Prior to its amendment by the REAL ID Act, 8 U.S.C. § 1252(g) stated:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), the Supreme Court addressed the scope of § 1252(g)'s bar on jurisdiction in a non-habeas case. There, the plaintiffs sued the defendants for allegedly violating the First and Fifth Amendments by "targeting them for deportation because of their affiliation with a politically unpopular group." *Id.* at 472-74.

In analyzing § 1252(g), the Supreme Court explained that this statute plainly deprives courts of subject matter jurisdiction in cases regarding the "three distinct actions" listed in § 1252(g): "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 482. Thus, because the lawsuit alleging constitutional violations arising from the decision to commence removal proceedings, the Supreme Court concluded that "8 U.S.C. § 1252(g) deprive[d] the federal courts of jurisdiction over [the] claims[.]" *Id.* at 492. Notably, "[n]owhere in [*American-Arab Anti-Discrimination Committee*] did the Court suggest[] . . . that the statute's jurisdictional limits might not apply depending on the particular grounds raised by an alien challenging the Attorney General's decision in these three areas." *Demore*, 538 U.S. at 537 (O'Connor, Scalia, and Thomas, JJ., concurring in part and concurring in the judgment) (emphasis added).

5

A few years later, in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court considered whether the pre-2005 version of 8 U.S.C. § 1252(b)(9) applied to habeas petitions. This version of § 1252(b)(9) provided:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

The Supreme Court concluded that because "§ 1252(b)(9) [did] not clearly apply to actions brought pursuant to the general habeas statute, and thus [could not] repeal that statute in part or in whole[,]" because "'judicial review' and 'habeas corpus' have historically distinct meanings." *St. Cyr*, 533 U.S. at 312, 314 (citing *Heikkila v. Barber*, 345 U.S. 229 (1953)).

But, as Justice Scalia noted in dissent, the *Heikkila* opinion that the Supreme Court relied on "simply assert[ed] that habeas corpus review is different from ordinary [Administrative Procedures Act] review" and did "not assert that habeas corpus review is not judicial review at all." *Id.* at 331 (Scalia, J., dissenting) (emphasis removed). And the Supreme Court's interpretation of this version of § 1252(b)(9) is inconsistent with the statutory text because Congress does not have to use "magic words" to make a "clear statement" stripping courts of jurisdiction. *Id.* at 333-35 (Scalia, J., dissenting); *see also Nasrallah v. Barr*, 590 U.S. 573, 594 (2020) (Thomas, J., dissenting) (citing *St. Cyr* as an example of the Supreme Court "systematically chip[ping] away at . . . jurisdictional limitations on immigration claims" over the course of "decades"). Indeed, the statute "[u]nquestionably, unambiguously, and unmistakably, . . . supersede[d] [28 U.S.C.] § 2241's general provision for habeas jurisdiction." *St. Cyr*, 533 U.S. at 332 (Scalia, J., dissenting).

Nevertheless, the REAL ID Act amended both § 1252(b)(9) and § 1252(g) to specifically strip courts of habeas jurisdiction when these statutes apply. *See Nasrallah*, 590 U.S. at 580 (majority

opinion) (explaining that the REAL ID Act superseded *St. Cyr* and "clarified that final orders of removal may not be reviewed in the district courts, even via habeas corpus, and may be reviewed only in the courts of appeals").

As amended, § 1252(g) now provides:

> Except as provided in this section and *notwithstanding any other provision of law* (statutory or nonstatutory), *including section 2241 of title 28, United States Code, or any other habeas corpus provision*, . . . no other court shall have jurisdiction to hear *any cause or claim* by or on behalf of any alien *arising from the decision or action by the Attorney General* to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

(Emphasis added).

Because § 1252(g)'s plain language uses the word "any" to modify the "cause[s] or claim[s]" arising from the discretionary acts listed, it "makes no exception for" the types of causes or claims that can be heard when the petitioner challenges a "decision or action" arising from one of the three enumerated, discretionary acts. *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021). This is true regardless of the theory raised because "a party may not dress up a claim with legal or constitutional clothing to invoke [a court's] jurisdiction[.]" *Id.* at 1274 (quoting *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc)).

Moreover, § 1252(g)'s use of the phrase "arising from" means that if any of the three discretionary acts listed "is the basis of the claim[,]" federal courts lack subject matter jurisdiction over the proceedings. *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013); *see also Arise*, Black's Law Dictionary (12th ed. 2024) (defining to "arise [from]" as "[t]o originate" or "to stem (from)"). As the Fifth Circuit has explained, a claim arises from the decision or action to commence proceedings, adjudicate cases, or execute removal orders if the "claim[] [is] connected *directly and immediately*" to the decision or action. *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001)

7

(emphasis added) (quoting *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999)).

Under binding Eleventh Circuit precedent, "[s]ecuring an alien while awaiting a removal determination" is so directly and immediately connected to the decision to commence removal proceedings that it "constitutes an action taken to commence proceedings." *Gupta*, 709 F.3d at 1065; *see also Jennings v. Rodrigues*, 583 U.S. 281, 318 (2018) (Thomas, J., concurring in part and concurring in judgment) ("[D]etention is an 'action taken . . . to remove' an alien." (alteration in original)); *Mbutha v. U.S. Immigr. & Customs Enf't*, --- F. Supp. 3d ----, No. 1:25-cv-23593-EA, 2025 WL 3550997, at *2 (S.D. Fla. Dec. 11, 2025) ("[D]etaining an alien undoubtedly '*arises*' from the Attorney General's 'decision or action' to commence proceedings against the alien, as those terms plainly indicate."). Indeed, courts have no jurisdiction to review "ICE's decision to take [aliens] into custody and to detain [them] during [their] removal proceedings" because "[t]hese [actions] . . . arise from ICE's decision to commence proceedings." *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016).

The decision either to grant or deny bond to an alien likewise arises from the decision to commence removal proceedings because the common law considered release on bond to be a form of detention and presents a question of the "method[] of retaining control over a defendant's person, not one between seizure and its opposite." *See Albright v. Oliver*, 510 U.S. 266, 278 (1994) (Scalia, J., concurring) (first citing 2 M. Hale, Pleas of the Crown *124; and then citing 4 William Blackstone, *Commentaries* *290, *297); *see also Bond*, Black's Law Dictionary (12th ed. 2024) ("The effect of the release on bail bond is to transfer custody of the defendant from the officers of the law to the surety on the bail bond[.]").

Applied here, § 1252(g) deprives the Court of subject matter jurisdiction to consider the petition.

The petitioner asserts that because the State of Florida declined to prosecute him, he must be released from custody because, in his view, "there is no longer any rational basis for his continued detention." ECF No. 5 at 1-2. But his current detention is not due to the now-dropped state charges because the United States is not using the arrest as the basis to remove him since it claims he is removable for not having the necessary documentation when he entered the country. ECF No. 16-4 at 2-3. Indeed, the petitioner acknowledges that he is being detained "pending removal proceedings." ECF No. 1 ¶ 2; *see also* ECF No. 16-4 at 3 ("The [petitioner] will be held in ICE custody pending removal proceedings.").

Thus, by seeking release from custody "pending removal proceedings," the "basis of his claim" is a challenge to the decision to commence removal proceedings against him, which is plainly barred by § 1252(g). Additionally, the petitioner's request for bond is "directly and immediately connected" to the decision to commence removal proceedings because granting release on bond is a form of securing or detaining an alien, which arises from the decision to commence removal proceedings.

Therefore, § 1252(g) deprives this Court of subject matter jurisdiction over this petition.

## Merits

Under federal law, "if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 240." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Subject to exceptions, other aliens may either be detained or released on bond. 8 U.S.C. § 1226(a).

9

Federal law defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)[.]" 8 U.S.C. § 1225(a)(1). For purposes of § 1225(b)(2)(A), an alien "seeking admission" is the same as an "applicant for admission" because "[t]here is no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." *Buenrostro-Mendez v. Bondi*, --- F.4th ----, No. 25-20496, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026) (quoting *Garibay-Robledo v. Noem*, --- F. Supp. 3d ----, No. 1:25-CV-177-H, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)); *see also Lopez v. Dir. of Enf't and Removal Ops.*, --- F. Supp. 3d ----, No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *2 (M.D. Fla. Jan. 26, 2026) (treating an alien "seeking admission" as an "applicant for admission"); *Morales v. Noem*, --- F. Supp. 3d ----, No. 25-62598-CIV-Singhal, 2026 WL 236307, at *4 (concluding that an alien present in the United States without being lawfully admitted is subject to mandatory detention); *Weliton Lopes Costa v. Noem*, No. 3:25-cv-1384-JEP-MCr, 2026 WL 456771, (M.D. Fla. Feb. 18, 2026) (applying *Lopez* to conclude that an alien was an applicant for admission).

Additionally, an alien released into the United States on humanitarian parole is an alien seeking admission because "such parole of such alien *shall not be regarded as an admission* of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served *the alien shall forthwith return or be returned to the custody* from which he was paroled and thereafter his case shall continue to be dealt with *in the same manner as that of any other applicant* for admission to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added).

10

Here, the petitioner is an alien "seeking admission" into the United States because, under § 1182(d)(5)(A), his alleged humanitarian parole does not constitute admission into the United States, which makes him an alien present in the United States who has not been admitted, i.e. an applicant for admission under § 1225(a)(1). Accordingly, the petitioner is subject to mandatory detention under § 1225(b)(2)(A).

Moreover, contrary to the petitioner's argument, there is no Fifth Amendment Due Process Clause violation by the Secretary of Homeland Security's decision to revoke his humanitarian parole without a hearing or any other form of due process as the Constitution does not require such. *Fong Yue Ting*, 149 U.S. at 728; *see also Morales*, 2026 WL 236307, at *9 (rejecting an argument that mandatory detention under § 1225(b)(2)(A) violates the Fifth Amendment's Due Process Clause). Indeed, the Constitution grants Congress the authority to require aliens "to be removed out of the country by executive officers, *without judicial trial or examination*, just as it might have authorized such officers absolutely to prevent his entrance into the country." *Fong Yue Ting*, 149 U.S. at 728 (emphasis added).

Likewise, there is also no Eighth Amendment violation because he was detained pursuant to federal law and there is no evidence that the government has actively tortured him. *See id.* at 730 (explaining that "the provisions of the Constitution[] . . . prohibiting . . . cruel and unusual punishments[] have no application" to an order of deportation obtained "by appropriate and lawful means"); *In re Kemmler*, 136 U.S. 436, 446 (1890) (explaining that the Eighth Amendment, as properly and originally understood, prohibits punishments that are "manifestly cruel and unusual, [such] as burning at the stake, crucifixion, breaking on the wheel, or the like"). In any event, the petitioner has received treatment for his back injury since being detained by ICE, so this argument is now moot. *See* ECF No. 16-13 at 2; *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("[A] suit

becomes moot[] 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome." (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013))).

Thus, even if there is jurisdiction over the petition, it appears from the petition and supplemental briefing that the petitioner is not entitled to the issuance of the writ. *See* 28 U.S.C. § 2243 ("A court[] . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto*." (emphasis added)).

## Conclusion

Therefore, it is **ORDERED AND ADJUDGED**:

1. The petition [ECF No. 1] is **DENIED**.

2. This **CASE IS CLOSED**.

3. All pending motions are **DENIED AS MOOT**, and all pending deadlines are **TERMINATED**.

**ORDERED** in Chambers in West Palm Beach, Florida, this 19th day of February 2026.

_____
ED ARTAU
UNITED STATES DISTRICT JUDGE

Copies Served:

**Michael A. Pizzi**
Michael A Pizzi, Jr., P.A.
Suite 316
6625 Miami Lakes Drive East
Miami Lakes, FL 33014
305-777-3800
Fax: 305-777-3802
Email: mpizzi@pizzilaw.com

**Noticing 2241/Bivens US Attorney**
Email: usafls-2255@usdoj.gov

**Noticing INS Attorney**
Email: usafls-immigration@usdoj.gov

**Alicia Hayley Welch**
DOJ-USAO
Civil Division
99 N.E. 4th Street
3rd Floor
Miami, FL 33132
305-961-9455
Email: Alicia.Welch@usdoj.gov